BRADLEY *vs.* BURWELL and another, ex'rs of Gould.

Where one of several joint obligors dies, his representatives are at law discharged from liability to the obligee. *Per* JEWETT, J.

But they are liable in equity, unless the deceased was a surety. *Per* JEWETT, J.

Equity will not treat a joint bond as though it were joint and several, for the purpose of allowing a creditor to pursue the representatives of a deceased co-obligor, where he was a surety.

Where two or more persons become sureties for another in a joint obligation, there is an implied agreement among the sureties, arising at the time when they execute the principal contract, that as between themselves they will contribute ratably towards discharging any liability which they may incur in consequence of becoming such sureties ; and such agreement is binding upon the representatives of any of them w⁾ o may die.

Bradle. *v.* Burwell.

And the representatives of the deceased co-surety are liable to contribute towards reimbursing the surviving surety, though there was no default of performance of the obligation during the lifetime of the deceased.

Accordingly, where B. and G. became sureties for S., as guardian of a minor, in a joint bond executed by the three, conditioned for the due execution of the trust by the guardian; and *after the death of G.* the guardian committed a breach of his duty, on account of which the obligee recovered a judgment against S. and B., which B., the surviving surety, paid; *held*, that B. could maintain an action against the executors of G. to recover a moiety of the amount so paid by him.

*Held also*, that it was no objection to the action that B., after the judgment, paid voluntarily without waiting for execution to be issued against him.

In such a case the plaintiff must declare specially, and cannot recover on a count for money paid to the defendants' use, or to the use of their testator. *Semble.*

And the declaration should count upon the mutual promises made by the co-sureties at the time of entering into the principal obligation.

DEMURRER to two pleas interposed to the third and fourth counts of the plaintiff's declaration. The third count stated that on the 23d day of January, 1832, Thomas Gould the defendants' testator, and the plaintiff, became sureties for A. C. H. Smith, who was appointed general guardian for M. E. Fuller, a minor, in a joint bond executed by the three, to Fuller, in the penalty of $8500, conditioned that Smith should faithfully perform his trust as guardian and render a just and true account when thereunto required: by means whereof, it is averred, the plaintiff and Gould became liable as co-sureties to pay to Fuller any damages which he might sustain on account of any default of Smith as guardian; and by means whereof also Gould in his lifetime became liable to pay the plaintiff the moiety of any moneys which he, the plaintiff, might become liable to pay and might pay to Fuller, by reason of any default on the part of the guardian; and that being so liable, Gould in his lifetime, to wit, on the day and year aforesaid, &c. undertook and faithfully promised the plaintiff well and truly to pay him the moiety of all such moneys when he should be thereunto requested, after the payment thereof by the plaintiff, according to the bond. The count then proceeds with an averment that afterwards, and after the death of Gould, to wit, on the 22d November, 1843, Fuller recovered a judgment in the supreme court, against the plaintiff and Smith the guardian, for $2347,52, on account of the default

Bradley v. Burwell.

of Smith, as guardian, to perform his duties according to the condition of the bond; and that after such recovery, to wit, &c. the plaintiff paid the amount thereof to Fuller, with costs, as he was bound and obliged to do, of all which the defendants had notice. Breach: that the defendants, as executors of Gould, have not paid the plaintiff the moiety of the moneys so by him paid to Fuller, but have hitherto refused &c.

The fourth count was substantially like the third, except that the *promise* to pay to. the plaintiff the moiety of the moneys which he should be obliged to pay on account of the bond, which in the third count is averred to have been made by Gould in his lifetime, is in this count alleged to have been made by the defendants as his executors, after his death; the consideration of which promise is stated to be the liability of Gould to reimburse the plaintiff the moiety of whatever he might have to pay in consequence of executing the bond.

The defendants pleaded to both counts, 1st. That the condition of the bond was not broken by the guardian during the lifetime of Gould, their testator, but was faithfully kept by Smith until after the death of Gould; 2d. That the plaintiff paid the amount recovered by Fuller voluntarily and of his own accord, and without being obliged by execution or otherwise to pay the same; and so they say that he paid the same of his own wrong, &c. The plaintiff demurred to both pleas, and the defendants joined in demurrer.

*J. A. Spencer*, for the plaintiff, stated the question to be whether the personal representatives of a co-surety in a joint bond, executed for a guardian, can be compelled to contribute to the other surety who has been obliged to pay money in consequence of a breach on the part of the guardian, occurring after the death of their testator, the condition having been faithfully performed during his lifetime. He maintained that there was an implied promise to contribute, by each of the sureties to the other, arising out of the transaction at the time of the execution of the bond; in support of which he referred to the following authorities: (*Marshall* v. *De Groot*, 1 *Caines' Cas. in Err.* 122;

*Bachelder* v. *Fisk,* 17 *Mass.* 464; *Hutton* v. *Eyre,* 6 *Taunt.* 289; *Birkley* v. *Presgrave,* 1 *East,* 220; 1 *Binney,* 123; 1 *Marsh.* 603; 3 *N. Hamp.* 270.) And to shew that it was not essential that an execution should have issued against the plaintiff, he cited *Butler* v. *Wright,* (2 *Wend.* 369.)

*N. Hill, Jr.,* for the defendants. On the death of the defendants' testator he was discharged from the bond. Where all the obligors in the bond are principals, the case is different. There, where one of them dies and the survivors are afterwards obliged to pay, the representatives of the deceased must, it is admitted, contribute. The liability of sureties is different. As a surety is bound only by the legal obligation which he incurs, when that ceases he is discharged. He is never made liable in equity; and therefore when he dies and the obligation attaches against *the other joint obligors who have survived, he is discharged at* law and his representatives cannot be pursued in equity; and no one can be compelled to contribute who could not have been made liable to the original creditor. Here the cause of action, if any, accrued after the death of Gould; and if the plaintiff has any remedy, it is simply for money paid, and the plaintiff can sustain his action upon a common count. In cases of contribution it is not necessary to declare specially. Now for whose use was this money paid by the plaintiff? Not for the use of the testator, for he was dead. It was not in any sense for the use of his representatives. An action for contribution is not based upon any contract express or implied. It is a mere creature of equity. (*Deering* v. *The Earl of Winchelsea,* 2 *Bos. & Pull.* 270; 1 *Cox's Eq. R.* 318; 3 *Bligh's R.* 290; 1 *Story's Eq.* 3*d ed.,* 503, *note* 1.)

The case of *Walters* v. *Riley,* (1 *Harr. & Gill,* 305,) is parallel with that now before the court. W. and R. were joint sureties in an administrator's bond. W. died, and then judgment was obtained against the principal and the surviving surety R. R. afterwards died, and his representatives sued the representatives of W. It was held that the plaintiff could not recover;

that the liability of W. was extinguished by his death. (*See also Washington's Va. R.* 136.)

Where two or more persons borrow money and give a joint bond, and one of them dies, the court of chancery, for the purpose of allowing the creditor to follow the assets of the deceased in the hands of his representatives, will declare the obligation to be in effect joint and several. This will not be done against the representatives of a *surety* in a joint bond. (*Bishop* v. *Church,* 2 *Ves. sen.* 100, 371; *Thomas* v. *Frazer,* 3 *Ves. jun.* 399; *Simpson* v. *Vaughan,* 2 *Atk.* 30; 2 *Harr. & John.* 480, *note; Hunt* v. *Rousmanier,* 8 *Wheat.* 212; *Story's Eq.* § 164.) It is submitted that upon the principle of these cases the liability of a surety in a joint bond is extinguished on his death leaving other joint obligors surviving.

*By the Court,* JEWETT, J. It is a general principle, that in case of a joint bond or obligation, if one of the obligors dies, his representatives are at law discharged from liability to the obligee, and the survivor alone can be sued. (1 *Chitty's Pl.* 36.) But in equity the representatives of such deceased obligor are liable, unless the deceased was a mere surety; in such case even equity will not extend by implication the responsibility from that of a joint to a joint and several undertaking. (*Weaver* v. *Shryock,* 6 *Serg. & Rawle,* 262; *Sumner* v. *Powell,* 2 *Meriv. R.* 30; *Harrison* v. *Mirge,* 2 *Wash. Va. R.* 136; *Ward* v. *Webber,* 1 *id.* 274; *Thomas* v. *Frazer,* 3 *Ves. jun.* 399; 1 *Story's Com. on Eq.* § 162 *to* 164.) (*a*)

The counsel for the defendants, on the argument, assumed the principle that the liability of one co-surety to contribute to another, must depend upon his liability to the creditor, at the time of payment of the debt by such other, or at most at the time that such other's liability was fixed and ascertained, by judgment or decree; and that as Gould or his representatives were never thus liable to Fuller, no breach of the condition of the bond having been committed in Gould's lifetime, and as by

(*a*) See *Lawrence* v. *Leake & Watts Orphan House,* (2 *Denio,* 577.)

his death his representatives were discharged of any claim by Fuller, the plaintiff had no right of action against the latter for any portion of the amount of the judgment recovered against, and paid by him upon the bond, as survivor of Gould.

From the examination which I have made I am entirely satisfied that the principle assumed is not sound, and that it cannot be sustained. I think that the law implies a contract between co-sureties to contribute, ratably, towards discharging any liability which they may incur in behalf of their principal, such contract originating at the time they execute the principal obligation; that there results, by implication of law, a promise on the part of the principal to indemnify his sureties; and also in like manner a mutual promise between the sureties, to contribute proportionally towards indemnifying each other against such liability; and that such implication does not take its origin from the subsequent payment of the money. The right of action for contribution arises, it is true, when the surety claiming such contribution pays the money, and not before. Notwithstanding a breach, the debt may be paid by the principal, or relinquished or compromised, and the surety never compelled to pay; and in that case he never has a cause of action, either as against his principal or co-surety. The right of action as between the sureties grows out of the original implied agreement, that if one shall be compelled to pay the whole or a disproportionate part of the debt, the other will pay such sum as will make the common burden equal. In case of the death of either, this obligation devolves upon his legal representatives. In this respect it is like any other contract made by one in his lifetime, to pay money at a future time, absolutely or contingently, who dies before the occurrence of any breach of the contract. (*Tom* v. *Goodrich,* 2 *John. R.* 213; *Story on Contr.* §§ 558, 584; *Chit. on Contracts,* 597; *Toussaint* v. *Martinant,* 2 *Term. R.* 104; *Powell* v. *Smith,* 8 *John.* 249; *Cowell* v. *Edwards,* 2 *Bos. & Pull.* 268; *Deering* v. *The Earl of Winchelsea, id.* 270; *Wood* v. *Leland,* 1 *Metc. R.* 387; *Bachelder* v. *Fisk,* 17 *Mass. R.* 464.)

The case of *Bachelder* v. *Fisk* is directly in point; the facts

Bradley *v.* Burwell.

alleged are nearly identical with those in the case under consideration. The declaration, which was in assumpsit, contained a special count, in which it was alleged that Ebenezer Fisk, on the 4th of October, 1813, was duly appointed guardian for one Elbridge Fisk a minor ; that the plaintiff and defendant's testator became bound as sureties for the guardian to the judge of probate in a bond for $10,000, with a condition substantially like the condition of the bond in this case. The count then averred that the plaintiff and the testator, so being sureties, it was mutually agreed by and between them (the promise of one being the consideration of the promise of the other,) that the plaintiff would save harmless and indemnify the testator for one-half part of all damages and charges that might or should happen to the testator by reason of his being so bound, and that he, the testator, would in like manner save harmless and indemnify the plaintiff. It then averred a breach of the condition of the bond by the guardian, the coming of age of the ward, his requirement of account and payment of the moneys of the ward in his hands; that the guardian had a large sum of money, to wit &c., that he neglected to pay, and that the plaintiff by reason thereof and to prevent his goods from being taken, paid a large sum, to wit &c., and that a certain sum, to wit &c., was the one-half part of the damages the plaintiff had sustained, concluding with the usual breach by testator in his lifetime and by executors since his death. The facts were as follows : Ebenezer Fisk, at the time mentioned, was appointed guardian as averred in the declaration—the plaintiff and defendant's testator executed a bond as sureties for the guardian to the judge of probate, in the penalty of $10,000, conditioned for the faithful discharge of the trust by the guardian. The defendant's testator died April 9th, 1815. In June, 1820, the minor came of age, and demanded of the guardian an account and payment of $4,197,71 which was due from the guardian, who was insolvent ; and the plaintiff, on the 25th of August, 1820, paid to the ward the sum so due in discharge of the bond, without suit. The court held that a surety who had paid the debt of the principal, might have an action for contribution against his co-surety ;

and that the common form of the action was *indebitatus assump-sit* for money paid by the plaintiff for the use of the defendant; that the right of action is founded upon an implied promise by one surety to contribute towards indemnifying the other. It was said that there was in that case, (and the same remark is applicable to this case,) a technical objection to the usual form of declaring, in *indebitatus assumpsit,* inasmuch as the plaintiff could not allege that he paid the money for the use of his co-surety, after the death of the latter; and that if he alleged that he paid it for the use of the defendants, as executors, it would be to charge the defendants in their own right, which could not be done. That objection, it was said, was answered by the general principle, which is universally recognized and which was applied in *Birkley* v. *Presgrave,* (1 *East.* 220,) that when the law confers a right it will also give a remedy. That case, as well as this, furnishes an authority as to the form of pleading. The declaration there contained the usual money counts, with a special count setting forth the facts on which the implied promise of the defendant was founded, exhibiting the grounds and nature of the action. It was held also, that in actions of assumpsit the plaintiff, whenever he finds it necessary or useful, might set out his whole case; and if that showed a valid legal promise by the defendant, whether express or implied, it was sufficient.

It follows that the first plea to the third and fourth counts furnishes no sufficient answer. The defence there pleaded is, that the condition of the bond executed by the plaintiff and the defendants' testator as co-sureties for Smith the guardian, was not broken by the guardian in the lifetime of the testator, and that the plaintiff had not become liable or been obliged to pay any sum of money by reason of any default of the guardian arising out of or upon the condition of said bond or writing obligatory, during the lifetime of Gould. The facts thus set up are wholly immaterial, and cannot be a ground of defence.

The other plea which is demurred to, sets up as a defence to those counts, that the plaintiff voluntarily, and without being compelled by execution, paid the money, and so paid it in his

Bradley *v.* Burwell.

own wrong ; and that the same, if it had not been so paid, might and would have been collected against Smith. It is not necessary for the plaintiff, in order to sustain his action, to show that he was compelled to pay as a surety upon the bond by execution. When the contract has been broken, the surety may pay the money without suit and recover the amount of his principal, (*Mauri* v. *Heffernan*, 13 *John. R.* 58,) and by analogy, a surety may recover against his co-surety his due proportion upon the like ground. The pleas therefore are clearly bad—and judgment on the demurrer should be rendered in favor of the plaintiff, unless both of the counts to which the pleas demurred to were pleaded, are also bad for want of substance. (1 *Chitt. Pl.* 647, 643; *Miller* v. *Maxwell*, 16 *Wend.* 9.)

The third count, although unskilfully and inartificially drawn, is, I think, good in substance. It does not, as it should have done, contain a distinct averment of mutual promises; but the testator's undertaking and the consideration of it are set forth with sufficient certainty.

The fourth count I think is bad in substance as well as in form. The design of the pleader seems to have been, to charge the defendants upon promises by them in the capacity of executors; which would have been well enough on a proper occasion, if stated in proper form. (*Carter* v. *Phelps*, 8 *John.* 440; *Whitaker* v. *Whitaker*, 6 *id.* 112.) But I think the attempt here to do so has utterly failed. No promise by the testator to his co-surety is stated, but it is alleged that the defendants, as executors, in consideration of the liability of their testator to pay to the plaintiff a moiety of what he might pay, undertook and promised to pay the plaintiff such moiety, &c. The liability of the testator is stated to be a consequence of the joint bond and of the law in such case made and provided. The judgment recovered by Fuller against the plaintiff, after the death of the defendants' testator, is then stated, and the payment thereof by the plaintiff, with the common breach that the defendants, as executors, had not paid the plaintiff. One radical defect is in stating the testator's liability to have accrued on account of the joint bond and the law applicable to the case, whereas that liability arose out of the mutual

promises between the sureties implied by law from their relation as co-sureties. The consideration of the defendants' promise is mistakenly alleged to be the liability of their testator and the fact that the bond remained unpaid; and their promise is stated to have been made before any recovery by Fuller, and before the plaintiff had paid any thing. No cause of action had accrued against them, and no consideration existed for a promise by them until the recovery against the plaintiff and the payment thereof by him. The count cannot be sustained. But the third count being good, the plaintiff is entitled to judgment on the demurrers.

Judgment for plaintiff.

